UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| ROBIN LYNETTE BELL, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-315-SKL |
| | ) | |
| SAM'S EAST, INC., *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

# ORDER

Before the Court are a number of motions in limine (sometimes "MIL" or "MILs") filed jointly by Defendant Sam's East, Inc. ("Sam's") and Defendant Morgan's Striping Service, Inc. ("Morgan's," and collectively, the "Defendants"). The motions addressed in this order relate to the testimony of Plaintiff Robin Lynette Bell's ("Plaintiff's") expert witnesses: Russell J. Kendzior, Plaintiff's slip and fall expert [Docs. 56 & 57]; Dr. Nathan Wyatt, a neurologist who treated Plaintiff [Docs. 61, 62, & 66]; and Dr. Jason Eck, an orthopedic surgeon who treated Plaintiff [Doc. 64]. Also addressed in this order is Defendants' motion regarding whether Plaintiff may introduce evidence concerning damages for future pain and suffering and loss of enjoyment of life [Doc. 60].

## I.  BACKGROUND

This is a slip and fall, diversity jurisdiction case. Plaintiff claims that, on August 31, 2014, after shopping in a Sam's Club store, she was walking through the parking lot toward her car when she slipped and fell on a painted stripe, which was wet due to rainfall earlier in the day. Morgan's had previously been hired by Sam's to paint the stripes in the parking lot, and Plaintiff claims

Morgan's failed to put additives in the paint to make it less slippery when wet. Plaintiff asserts causes of action against Defendants for negligence. In her complaint, Plaintiff seeks $600,000 in damages for "(a) Permanent injuries to her knee and body as a whole, past and future; (b) Pain, mental anguish and suffering, past and future; (c) Medical and hospital expenses, past and future[1]; (d) Loss of the enjoyment of life, past and future; [and] (e) Lost wages and loss of earning capacity, past and present." [Doc. 1].

## II. MOTIONS BEFORE THE COURT

Defendants' joint MILs addressed herein are:

(1) Defendants' MIL #5 to Exclude Any Evidence or Testimony About any Future Treatment that was Not Testified to by an Expert and to Exclude any Medical Bills that were Not Testified to by an Expert [Doc. 60], filed January 17, 2018;

(2) Defendants' MILs #8-11 to Exclude Portions of Dr. Nathan Wyatt's Deposition Testimony [Doc. 61], filed January 17, 2018;

(3) Defendants' MILs #12-14 to Exclude All or Portions of Dr. Jason Eck's Deposition Testimony [Doc. 64], filed January 17, 2018;

(4) Defendants' MIL #15 *Daubert* Motion to Exclude Plaintiff's Expert, Dr. Nathan Wyatt [Docs. 62 & 66], filed January 17, 2018;

(5) Defendants' MIL #26 *Daubert* Motion to Exclude Plaintiff's Expert, Russell Kendzior [Doc. 56], filed January 10, 2018; and

(6) Defendants' MILs #27-33 to Exclude Portions of Deposition Testimony (relating to Mr. Kendzior) [Doc. 57], filed January 10, 2018.

Plaintiff filed responses to these motions [*see* Doc. 76 (response to Doc. 60); Doc. 77 (response to Doc. 61); Doc. 78 (response to Doc. 64); Doc. 79 (response to Docs. 62 & 66); and Doc. 80 (response to Docs. 56 & 57)]. Sam's filed a reply in support of Defendants' motion in

---

[1] As explained later in this Order, Plaintiff has notified the Court and opposing counsel that she is no longer seeking future medical expenses [Doc. 76 at Page ID # 1064 n.1].

2

limine #5 [Doc. 85]. These matters are now ripe. Although Plaintiff requested a hearing on Defendants' *Daubert* motions, the Court has reviewed the materials and determined that a hearing on these motions is not necessary.

### III. STANDARDS

"In a diversity case, the admissibility of evidence is a procedural matter governed by federal law." *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) (citation omitted). A motion in limine is a motion "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 581 (6th Cir. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). The goal of a motion in limine is "to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Id.* (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)). As the Sixth Circuit has noted, "[o]rders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).

**A. Standards Relevant to the *Daubert* Motions**

The admissibility of an expert's testimony is determined by Rule 702 and the standard established by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny.

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the

principles and methods to the facts of the case.

Fed. R. Evid. 702. "Facts or data upon which expert opinions are based may, under the rule, be derived from three possible sources": (1) opinions based upon the firsthand observation of the witness, such as a treating physician; (2) opinions based upon facts presented at trial, such as asking the expert witness a "hypothetical question or having the expert attend the trial and hear the testimony establishing the facts"; and (3) opinions based upon facts and data presented to the expert outside of court. Fed. R. Evid. 703 advisory committee's note to the 1972 proposed rules.[2]

Rule 702 reflects decisions by the United States Supreme Court in *Daubert* and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), which establish the district court's role as a gatekeeper to exclude unreliable expert testimony. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008) (discussing *Daubert* and *Kumho*). A court has two roles under *Daubert*: determining whether the evidence is reliable and analyzing whether the evidence is relevant. 509 U.S. at 590-93. Courts must focus "solely on principles and methodology, not on the conclusions that they generate." *Id*. at 595; *see also Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 675 (6th Cir. 2010) ("The

---

[2] "The purpose of Rule 703 is to make available to the expert all of the kinds of things that an expert would normally rely upon in forming an opinion, without requiring that these be admissible in evidence. . . . In short, through Rule 703, the law is catching up with the realities of professional life." *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981). Thus, "great liberality is allowed the expert in determining the basis of his opinions," *Eggert v. Meritain Health, Inc.*, 428 F. App'x 558, 567 (6th Cir. 2011) (quoting *Mannino*, 650 F.2d at 853) (alteration omitted), and an expert may base his opinion on facts or data that would be inadmissible in evidence, including hearsay evidence. *See Kingsly Assocs., Inc. v. Del-Met, Inc.*, 918 F.2d 1277, 1286-87 (6th Cir. 1990). "This rule has frequently been interpreted to allow into evidence hearsay statements," which are admitted not for the truth of the matter asserted but rather to establish the basis of the expert's opinion. *Trepel v. Roadway Exp., Inc.*, 194 F.3d 708, 717 (6th Cir. 1999) (citations omitted). The question the court must ask, when determining whether otherwise inadmissible evidence may be introduced as the basis for the expert's opinion, "is whether the material sought to be introduced is of the type reasonably relied upon by experts in the field." *Id.* (citing *Mannino*, 650 F.2d at 853).

important thing is not that experts reach the right conclusion, but that they reach it via a sound methodology."). In its gatekeeper role, the court only has the authority to determine the admissibility of the evidence; the weight of the evidence is a determination left to the jury. *United States v. Stafford*, 721 F.3d 380, 394 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 463 (2013).

In deciding the admissibility of proposed expert testimony, the Sixth Circuit has identified three requirements of Rule 702. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529. First, the proposed expert must have the requisite qualifications, whether it be through knowledge, skill, experience, training, or education. *Id.* Second, the proposed testimony must be relevant, which entails the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (quoting Fed. R. Evid. 702). Third, the proposed expert testimony must be reliable. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529. Reliability can be assessed in a number of ways. Testimony can be reliable if it is "based on sufficient facts or data," and "the product of reliable principles and methods" which the expert in turn has applied to the facts of the case. Fed. R. Evid. 702. Additionally, a district court determining the reliability of proposed expert testimony may consider "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific [or technical] community." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593–94).

Assessing relevance and reliability requires a "preliminary inquiry as to whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Dilts v. United Grp. Servs., LLC*, 500 F. App'x 440, 445 (6th Cir. 2012) (quoting *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768,

5

792 (6th Cir. 2002)). Although an expert opinion must not rest purely on speculation, "Rule 702 does not require an expert to have absolute certainty in formulating his opinion." *Dilts*, 500 F. App'x at 445 (citing *Tamraz*, 620 F.3d at 670). On the contrary, "experts are permitted wide latitude in their opinions, including those not based on firsthand knowledge, so long as the expert's opinion has a reliable basis in the knowledge and experience of the discipline." *Dilts*, 500 F. App'x at 445 (quoting *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000)) (internal quotation marks and alterations omitted). An expert "need not base his opinion on the best possible evidence, but upon 'good grounds, based on what is known.'" *Deutsch v. Novartis Pharm. Corp.*, 768 F. Supp. 2d 420, 453 (E.D.N.Y. 2011) (quoting *Daubert*, 509 U.S. at 590).

The proponent of the expert evidence has the burden to establish the expert's opinion is admissible. *See* Fed. R. Evid. 104(a); *Donathan v. Orthopaedic & Sports Med. Clinic, PLLC*, No. 4:07-cv-18, 2009 WL 3584263, at *20 (E.D. Tenn. Oct. 26, 2009). An expert is different from a lay witness and "is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 593. The proposed expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd.*, 526 U.S. at 152. In determining whether to admit expert testimony, it is "broadly accepted that the district court has considerable leeway." *Baker v. Chevron U.S.A. Inc.*, 533 F. App'x 509, 520 (6th Cir. 2013) (citation and internal quotation marks omitted); *Tamraz*, 620 F.3d at 672.

As a general matter, "rejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 (citation and internal quotation marks omitted). If the expert's opinion is admissible, it may still be discredited via various tools such as "[v]igorous

cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596. If the expert opinion is deemed admissible, but ultimately found "insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment." *Id.*; *see also* Fed. R. Civ. P. 50.

### B. Federal Rules of Evidence 401, 402, and 403

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Relevant evidence is admissible" unless otherwise provided by the Constitution, federal statute, or the Federal Rules of Evidence, and "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. Relevant evidence may be excluded by the court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### C. Federal Rules of Civil Procedure 30 and 32

Under Rule 30 of the Federal Rules of Civil Procedure, "[a] party may, by oral questions, depose any person, including a party . . . ." Fed R. Civ. P. 30(a)(1). At trial, "all or part of a deposition may be used against a party" if "the party was present or represented at the taking of the deposition or had reasonable notice of it;" "it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying;" and the use is permitted as one of Rule 32(a)'s permissible uses for depositions in court proceedings. Fed. R. Civ. P. 32(a)(1).

## IV. ANALYSIS

### A. *Daubert* motions

The Court begins its analysis by noting that Defendants' *Daubert* motions [Docs. 56, 62, and 64[3]] were due by November 21, 2017 [*see* Second Amended Scheduling Order, Doc. 31], but were not filed until January 10 and 17, 2018. In filing their untimely *Daubert* motions, Defendants are effectively seeking to extend the deadlines set forth in the Second Amended Scheduling Order, which would require a showing of good cause and excusable neglect. *See* Fed. R. Civ. P. 6(b), 16(b)(4). Yet, Defendants make no attempt to show good cause or excusable neglect for their failure to timely file the *Daubert* motions. The Court set the *Daubert* motion deadline well in advance of trial because such motions can raise challenging issues that have a significant impact on the viability of Plaintiff's claims and recovery, and typically necessitate an evidentiary hearing. Moreover, Plaintiff raised the issue of the untimeliness of the *Daubert* motions in her responses to Defendants' *Daubert* motions, which gave Defendants the opportunity to address good cause and excusable neglect in a reply, but Defendants chose not to file any replies in support of their *Daubert* motions. The *Daubert* motions are untimely, and the Court will deny them on this basis.

The Court further notes, however, that upon reading the *Daubert* motions and responses, it appears Defendants' challenges to the treating doctors' opinions go more to the weight of their testimony (a question for the jury) than to their admissibility. The challenges focus on the fact that the doctors' opinions regarding the cause of Plaintiff's injuries are based primarily on Plaintiff's reported symptoms and medical history, and Defendants contend there are significant

---

[3] Doc. 64 contains Defendants' MILs #12-14. MIL #12 is a *Daubert* motion concerning Dr. Eck, while the other two MILs, addressed below, seek to exclude specific portions of Dr. Eck's testimony.

inconsistencies between Plaintiff's reports to the doctors and her actual documented medical record. Specifically, Defendants contend that Plaintiff had preexisting medical issues which could account for the conditions that she claims, and the doctors essentially agree, arose as a result of her fall. "Generally, a treating physician may provide expert testimony regarding a patient's illness, the appropriate diagnosis for that illness, and the cause of the illness," although the opinion "remains subject to the requirement set forth in *Daubert*, that an expert's opinion testimony must have a reliable basis in the knowledge and experience of his discipline." *In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06-md-1760, 2009 WL 2496927, at *1 (M.D. Tenn. Aug. 13, 2009) (citing *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 427-28 (6th Cir. 2009)) (other citation omitted). There is no question that both treating doctors are knowledgeable and experienced in evaluating symptoms and complaints similar to the ones experienced by Plaintiff. And, "weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility." *United States v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 342 (6th Cir. 1993) (citations omitted).

The admissibility of Mr. Kendzior's testimony, particularly regarding the reliability of his methods (although not about his qualifications or whether his testimony, if the product of reliable methods, would be helpful to the trier of fact) is also raised by Defendants. Plaintiff does not address the reliability of Mr. Kendzior's methods in her response to Defendants' *Daubert* motion, nor does Plaintiff address the case cited by Defendants, *Alsip v. Wal-Mart Stores East, LP*, 658 F. App'x 944 (11th Cir. 2016). In that case, the Court of Appeals for the Eleventh Circuit upheld a district court's decision to exclude Mr. Kendzior's testimony.[4] And, while the case is not binding

---

[4] Plaintiff also does not address the other cases cited by Defendant in which Mr. Kendzior's testimony was excluded: *Kalish v. HEI Hosp., LLC*, 980 N.Y.S.2d 80, 83 (2014), and *Parker v.*

on this Court, the facts of that case and, at least according to Defendants, Mr. Kendzior's methods, are strikingly similar to this case. While the Court will deny the untimely *Daubert* motion, the Court includes these comments because it expects these or similar issues to arise at trial if Mr. Kendzior attempts to testify. The parties should be prepared to address this issue further at the final pretrial conference.

**B. Defendants' MILs that raise objections to Plaintiff's deposition designations**

In addition to lodging *Daubert* objections to Plaintiff's experts, Defendants filed several MILs in which they argue that specific portions of the experts' deposition testimony should be excluded from use at trial on various evidentiary grounds.

Federal Rule of Civil Procedure 26(a)(3)(A) requires parties to make certain pretrial disclosures, including designating any deposition testimony they wish to admit in lieu of calling a witness to testify live. Rule 26(a)(3)(B) provides:

> (B) *Time for Pretrial Disclosures; Objections*. Unless the Court orders otherwise, these disclosures must be made at least 30 days before trial. Within 14 days after they are made, unless the court sets a different time, a party may serve and promptly file a list of . . . . any objections to the use under Rule 32(a)[5] of a deposition designated by another party under Rule 26(a)(3)(A)(ii) . . . . An objection not so made--except for one under Federal Rule of Evidence 402 or 403--is waived unless excused by the court for good cause.

*See also* Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment ("Upon receipt of these final pretrial disclosures, other parties have 14 days . . . to disclose any objections they wish to

---

*Wal-Mart*, 267 F.R.D. 373, 376 (D. Kan. 2010). The Court notes, however, that these cases are not as similar to the instant case as *Alsip*.

[5] Federal Rule of Civil Procedure 32(a) provides, in pertinent part: "At a hearing or trial, all or part of a deposition may be used against a party on these conditions: . . . (B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying . . . ."

preserve to the usability of the deposition testimony . . . ."); *NGM Ins. Co. v. Walker Const. & Dev., LLC*, No. 1:11-CV-146, 2012 WL 6553272, at *1 (E.D. Tenn. Dec. 13, 2012) ("Rule 26(a)(3)(B) of the Federal Rules of Civil Procedure provides fourteen days for filing objections to pretrial disclosures, which in this case would have been October 29, 2012.").

In this case, the parties' pretrial disclosures were due on December 5, 2017 [Doc. 31]. Plaintiff's disclosures were timely filed, and indicate that Plaintiff intends to offer the testimony of Dr. Eck and Dr. Wyatt by deposition [Doc. 35]. Pursuant to Rule 26(a)(3)(B) then, Defendant's objections to use of their depositions, except for any objections under Federal Rule of Evidence 402 or 403, were due on December 19, 2017. Defendants' objections to the deposition testimony were filed on January 10 or 17, 2017.[6] Thus, the objections (except for those lodged under Federal Rule of Evidence 402 or 403) are untimely. Defendants do not argue there is good cause for their failure to file the motions in a timely manner, even after Plaintiff raised the timeliness issue in her responses to the motions. The Court will therefore **DENY** as untimely the following list of Defendants' MILs: #8 & #9 in their entirety [Doc. 61]; #10 and #11 to the extent Defendants object on the basis of lack of foundation or speculation [*id.*]; and #13 & #14 in their entirety [Doc. 64].

Additionally, although Defendants filed seven MILs [Doc. 57 (motions #27-33)] seeking to exclude a number of specific questions/answers from Mr. Kendzior's deposition testimony, there is no indication Plaintiff designated any of Mr. Kendzior's deposition testimony to be presented at trial. Plaintiff's witness list reflects Plaintiff's intent to have Mr. Kendzior testify live. Defendants will obviously have the opportunity to object to any improper live testimony Mr. Kendzior offers at trial. The Court will therefore **DENY AS MOOT** Defendants' MILs #27-33

---

[6] The fact that Defendants' motions were filed as "motions in limine" rather than as "objections" to the pretrial disclosures is of no moment. In substance, they are objections to the pretrial disclosures.

[Doc. 57].

The remaining MILs pertaining to the expert deposition designations are #10 and #11, to the extent Defendants object under Federal Rule of Evidence 402 and 403.

In MIL #10, Defendants argue the following deposition testimony of Dr. Wyatt is inadmissible under Federal Rule of Evidence 403:

> Q. Do you have a conclusion as to what the fall in August of 2014 would have done to an already existing brain injury?
>
> A. So repeated brain traumas are generally felt to increase the chances of persistent traumatic brain-induced symptoms. The classic example of that is a lot of the publicity that's coming out of autopsies of former football players who have chronic traumatic encephalopathy. That's a pretty extreme example. These are guys who get hit in the head a lot. Sustaining repeated head injuries is generally felt to increase the chances of having some kind of persistent symptoms after one of the -- after a brain injury, a subsequent brain injury.

[Doc. 61 at Page ID # 914; Doc. 61-1 ("Wyatt Dep.") at Page ID # 920-21).

Defendants argue this testimony should be excluded under Federal Rule of Evidence 403, because "the risk of unfair prejudice, confusing the issues, and misleading the jury outweighs any potential probative value of such evidence," specifically, because there "is no evidence that plaintiff's injury was similar to that of football players who, as Dr. Wyatt pointed out, 'get hit in the head a lot.'" [Doc. 61 at Page ID # 914]. The Court agrees with Plaintiff that Dr. Wyatt's testimony is easily understandable as an explanation of the effects of repeated head injuries, and he even goes out of his way to note that the CTE/football player analogy is a "pretty extreme example." There is no danger the jury will interpret Dr. Wyatt's testimony as an opinion that Plaintiff will develop CTE as a result of her fall at Sam's. The Court will therefore **DENY** Defendants' MIL #10.

In MIL #11, Defendants argue that the following testimony from Dr. Wyatt is "irrelevant":

> Q. Doctor, are there side effects related to headaches caused by hydrocodone?
>
> [Objection to form]
>
> Q. Let me do it this way, Doctor. Are you familiar with the term called "rebound headaches"?
>
> A. Yes.
>
> Q. Okay. Are rebound headaches -- how does one get rebound headaches?
>
> A. So when someone takes a medication, a pain medication, a relief medication, not daily prevention medicine, when someone takes a relief or abortive medication to relieve headache pain on a very regular basis, that can lead to rebound headaches.
>
> Q. Are rebound headaches associated with hydrocodone?
>
> A. Yes. And also with basically any other type of pain medication.
>
> Q. Doctor, given all the questions that you've been given today and all the documents and records that you've been presented, does it change your conclusion regarding what has caused an increase in Ms. Bell's headaches?
>
> A. No, it doesn't change my overall opinion on that and the reason is because based on my interactions with the patient, my interview and collection of history, I was presented details by her in which she said that her headaches had become much worse since she hit her head.

[Doc. 61 at Page ID # 915; Wyatt Dep. at 51-52].

Defendants argue that this evidence should be excluded as "irrelevant" because there "is no expert testimony from Dr. Wyatt or anyone else stating that plaintiff was suffering from rebound headaches from taking Hydrocodone before the accident at Sam's Club," and because even if Plaintiff "had pre-accident rebound headaches, there is no expert testimony tying those headaches

13

to plaintiff's condition after the accident." [Doc. 61 at Page ID # 915].

Defendants explored Plaintiff's past use of Hydrocodone and headaches in their examinations of Dr. Wyatt. Dr. Wyatt, a neurologist, is qualified to opine about the general effects of Hydrocodone use on headaches, and the Court finds it has at least arguable relevance to the issues in this case. The Court will therefore **DENY** Defendants' MIL #11.

**C. Defendants' MIL #5 regarding Plaintiff's future damages**

In MIL #5, Defendants ask the Court to exclude "any evidence or argument that plaintiff should recover damages for medical expenses, pain and suffering, loss of enjoyment of life, and permanent impairment after her final appointment with Dr. Jason Eck (orthopedic surgeon) on September 21, 2016, [and] with Dr. Nathan Wyatt (neurologist) on August 23, 2017."[7] [Doc. 60 at Page ID # 886]. Defendants also ask the Court to exclude at trial "any testimony" from Plaintiff regarding her condition "after her final appointments listed above." [*id.*].

Through her complaint, as stated above, Plaintiff seeks $600,000 in damages for past and future injuries, pain and suffering, and expenses, and past and future loss of enjoyment, wages and earning capacity. In a footnote to her response to Defendant's motion, however, Plaintiff "notifies the Court and opposing counsel that *Plaintiff is not seeking future medical expenses*." [Doc. 76 at Page ID # 1064 n.1 (emphasis added)]. Based on that representation, then, the Court finds that Defendants' MIL # 5 is limited to a question of whether Plaintiff may pursue damages for future pain, mental anguish and suffering caused by her permanent injuries, and for future loss of

---

[7] In her responses to interrogatories, Plaintiff indicated that she would "rely upon the advice of her treating physicians regarding future medical treatment." [Doc. 60-3 at Page ID # 909]. Based on their MIL #5, it seems Defendants believe Plaintiff's "treating physicians" in this context are limited to Dr. Wyatt and Dr. Eck. In her response to Defendants MIL #5, Plaintiff does not contend that she has any other treating physicians from whom she plans to rely upon for future treatment who will offer testimony in this case, nor does her witness list appear to contain any doctors other than Dr. Wyatt and Dr. Eck.

enjoyment of life.

Defendants essentially argue that Plaintiff has no expert proof that her injuries are permanent and will continue to cause her pain and suffering or loss of enjoyment of life. Defendants argue such expert proof is required for a plaintiff to pursue damages for future pain and suffering under Tennessee law, which provides that "[m]edical causation and permanency of an injury must be established in most cases by expert medical testimony." [Doc. 60 at Page ID # 888-89 (quoting *Thomas v. Aetna Life & Casualty Co.*, 812 S.W.2d 278, 283 (Tenn. 1991))].

Plaintiff is not seeking any future medical expenses, and points to no expert testimony showing a permanent impairment rating from either Dr. Wyatt or Dr. Eck. At best, Dr. Eck's deposition states:

> Q. And Doctor, do you have an opinion as to the long-term outlook of Ms. Bell's condition?
>
> A. At this point, or at least at the point of 2015, October 12, she had pretty significant stenosis, moderate to severe, causing compression up against the nerves that will likely continue to progress into the future. As it does, the symptoms typically do become more severe. She can have worsening pain, numbness, tingling, and then at some point may start developing more weakness than she had.

[Doc. 76-1 at Page ID # 1073].

Plaintiff cannot testify as a lay witness that her injuries are permanent. Plaintiff may testify as a lay witness, however, as to her pain and suffering and loss of enjoyment of life as she has experienced those feelings both before and after her last appointments with her treating physicians. Therefore, to the extent Defendants are seeking to disallow Plaintiff from testifying about her own pain and suffering and loss of enjoyment of life since her last appointments with her treating physicians, the motion is **DENIED**. To the extent Defendants are seeking a ruling that

Plaintiff may not offer expert testimony that her injuries are permanent, they have not identified any specific testimony they wish to exclude, and the motion is therefore **DENIED** on the current record. The Court notes, however, that the deposition testimony of Dr. Eck is not sufficient to show a specific permanent impairment rating, therefore the utility of Dr. Eck's testimony for proving any future pain and suffering or loss of enjoyment of life damages is questionable at best. To the extent Defendants seek a ruling that Dr. Eck may not testify as to the cause of Plaintiff's injuries, the Court finds this argument is essentially a recasting of Defendants' untimely *Daubert* arguments, and will **DENY** the motion on this basis.

**V.    CONCLUSION**

For the reasons set forth above:

(1) Defendants' MIL #5 [Doc. 60] – to exclude certain lay evidence or testimony – is **DENIED**;

(2) Defendants' MILs #8-11 [Doc. 61] – to exclude portions of Dr. Wyatt's deposition testimony – are **DENIED**;

(3) Defendants' MILs #12-14 [Doc. 64] – a *Daubert* motion to exclude the entire testimony of Dr. Jason Eck, and other MILs to exclude certain portions of Dr. Eck's testimony – are **DENIED**;

(4) Defendants' MIL #15 [Doc. 62] – a *Daubert* motion to exclude the testimony of Dr. Nathan Wyatt – is **DENIED**;

(5) Defendants' MIL #26 [Doc. 56] – a *Daubert* motion to exclude the testimony of Mr. Kendzior – is **DENIED**; and

(6) Defendants' MILs #27-33 [Doc. 57] – to exclude portions of Mr. Kendzior's testimony – are **DENIED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE